**PRATT v. UNITED STATES.**
No. H–328.

Court of Claims.
March 2, 1942.

LITTLETON, Judge, dissenting in part.

Edward H. Cumpston, of Rochester, N. Y., for plaintiff.

Samuel E. Darby, Jr., of New York City, and Francis M. Shea, Asst. Atty. Gen.

(Paul P. Stoughtenburgh, of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and JONES, MADDEN, LITTLETON, and WHITAKER, Judges.

MADDEN, Judge.

This is a patent case in which plaintiff charges the defendant with the infringement of all the claims, except claims 6 and 10, of the United States Patent No. 1499472, issued to plaintiff, Hazen C. Pratt, July 1, 1924, for "Airplane Landing Mechanism." On February 8, 1937, this court rendered its decision sustaining claims 1, 2, 3, 9, 12, 13, 14, 15, and 16 as valid and infringed. Hazen C. Pratt v. United States, 85 Ct.Cl. 1. The case is now before the court under the order of December 4, 1939, granting the defendant's motion for a new trial under Section 175 of the Judicial Code, 28 U.S.C.A. § 282.[1] The order authorized the defendant to present evidence regarding the patents, publications, and uses listed in its motion and their effect on the claims previously held valid and infringed, and to present additional evidence as to the method or methods of landing and apparatus employed by the United States within a period of six years prior to the filing of the petition. The prior record was made available on the new trial.

Pursuant to the order, the defendant on the new trial introduced the newly discovered prior patent to Whiteway (see finding 32) and prior British patent to Le Mesurier (see finding 30) and presented testimony of Captain Richardson, former head of the Design Branch of the Bureau of Aeronautics of the Navy Department, as to the apparatus and technique employed by the defendant during the period in question.

The various claims in plaintiff's patent involve an airplane landing mechanism, consisting of a rod attached to the body of the plane by a universal joint at a point in the rear of and below the center of gravity of the plane, with a hook on the end of the rod for the purpose of engaging a retarding device such as a cable stretched on the deck of the ship or other limited area where the plane is to be landed. The rod, withdrawn to lie against the body of the plane while in flight, serves when its hook end is let down by the pilot, to strike on the cable when the plane passes over the cable, and by sliding across the cable to bring the hook into engagement with it. When the cable is caught by the hook, it is stretched, whereupon braking devices such as drums or springs or pneumatic pistons at the ends of the cable bring the plane to a gradual stop. Instead of the hook being on the end of the rod, the hook might, under the claims, be attached to the end of, for example, a wire or cable connected with the plane, with a rod serving only the purpose of guiding the hook into engagement with the cable on the ground or deck. Under that arrangement, the pull would not be upon the rod, but upon the wire or cable attached to the plane. No patent is claimed upon the mechanism on the ground or deck, intended to be engaged by the mechanism on the plane.

Plaintiff stressed in his claims the merit of arresting the speed of the plane while in flight, and thus letting it descend to the landing surface after its forward motion had been decelerated. In order to carry out this purpose without danger that the plane would nose over forward or yaw sidewise as a result of the pull, plaintiff specified that the pull of the hook and rod should be exerted upon the plane to the rear of the center of gravity of the plane and approximately in fore and aft horizontal alinement with the center of gravity of the plane.

The defendant claims that the mechanism covered by plaintiff's claims was anticipated by earlier patents, publications, and practices, and that in any event the defendant did not, within the period of the statute of limitations before the bringing of this suit, infringe plaintiff's alleged patent.

As to anticipation, the device of the rod attached to the plane by a hinge or pivot,

---

[1] "The Court of Claims, at any time while any claim is pending before it, or on appeal from it, or within two years next after the final disposition of such claim, may, on motion, on behalf of the United States, grant a new trial and stay the payment of any judgment therein, upon such evidence, cumulative or otherwise, as shall satisfy the court that any fraud, wrong, or injustice in the premises has been done to the United States; but until an order is made staying the payment of a judgment, the same shall be payable and paid as on March 3, 1911, was provided by law."

with a hook at the end of the rod to engage a retarding device on the landing surface was shown by Le Mesurier's United States Patent, issued September 9, 1919. (See findings 30 and 31.) Figure 2 of Le Mesurier's patent is reproduced in finding 31. British, Austrian, and French patents to Von Keissler in 1912 (see finding 21) had disclosed various types of drag brakes such as rakes or plows, vertically movable under the pilot's control and intended to be let down to tear into the earth and stop the progress of the plane after its landing gear had touched the ground. These devices did not contemplate engagement with any retarding mechanism located on the landing field.

Plaintiff claims originality in the attachment of the rod or cable to the body of the plane at a point which would permit the retarding force to be transmitted to the plane in the rear of and in approximate fore and aft horizontal alinement with the center of gravity of the plane. However, the British patent to Whiteway of 1918, referred to in finding 32, Figure 8 of which patent is reproduced in that finding, shows a catch on a plane adapted to engage a stationary retarder, the catch being so located that the retarding force may be applied to the plane in the rear of and approximately in fore and aft horizontal alinement with the center of gravity of the plane.

If, then, the rod and hook were anticipated, and their location on the plane was anticipated, was their being so designed as to operate to retard the movement of the plane while still in flight, and thus cause it to land, rather than merely to retard the movement of the plane and stop its roll on the landing surface after it had reached that surface, original? We think not. The catch on the Whiteway patent as pictured in Figure 8 would operate that way if the plane were flown across the landing cable in a tail down attitude, or, whether or not the plane was in that attitude, if it descended across the cable in such a position that the front part of the landing gear passed over the cable but the catch engaged it. And the likelihood of such an engagement would be increased by lengthening the catch, or the member connecting it with the body of the plane, or by putting the catch at the end of a hinged and movable rod, as Whiteway suggested and as Le Mesurier did. Whiteway's patent may not be limited to the

exact construction and proportionate dimensions shown on his drawing when his specifications provided in terms for hinging the support, or arm of the catch, and arranging it "in such a way as to allow the clips to be raised or lowered by the aviator as desired."

The Le Mesurier United States patent device could also operate to retard a plane while in flight. Whether it was intended to do so or not is not clear. A portion of the specifications is as follows: "Thus when an aeroplane E is about to alight as it comes down on the landing surface A it will pass as shown in Fig. 2 in succession over these loops and a hook F suitably disposed on the under part of the aeroplane will engage with certainty one or other of the loops."

Figure 2 of the Le Mesurier patent, reproduced in connection with finding 31, cannot be taken as limiting the possible descent of the hook to a point just above the horizontal plane passing through the bottom of the wheels, even taking into consideration the statement in the specifications "as shown in Fig. 2." (See finding 31.) In the British patent to Le Mesurier of 1918, referred to in finding 30, there is the same Figure 2 and the same written matter as in his American patent, except that the language "as shown in Fig. 2," quoted above, is not present. As to the British patent then, there would be no reason at all for limiting the scope of the patent to the exact design shown by the drawing. And when one looks at Figure 2 in both patents it is easy to see why the hook was located as it was in the drawing. The wheels are on the deck, and the hook could not be put lower except by showing it protruding through the deck.

Even if the Le Mesurier patents were limited to the exact design shown in Figure 2, it would be possible for a plane, if it came in in a tail-down attitude, to just miss with its wheels but engage with its landing hook a transverse cable before the wheels touched the deck.

Even if Whiteway's patent with its catch (hook) and hinged support (rod) located as it was did not anticipate all the essentials of plaintiff's patent, as we believe it did, it is plain that by using Le Mesurier's rod and hook and attaching the rod where Whiteway's catch is attached to the plane, one has plaintiff's device. We see no invention in the combination of these two elements, even if we assume the originality

of either or both of them in the minds of Le Mesurier and Whiteway. This is not a case where the combination of two or more anticipated devices produced a successful or greatly improved mechanism which displaced prior mechanisms in the trade and thus proved its originality. Compare Eibel Process Co. v. Minn. & Ontario Paper Co., 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523; The Barbed Wire Patent (Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed-Wire Co.), 143 U.S. 275, 12 S.Ct. 443, 36 L.Ed. 154. Here the proof shows that the supposed merit of plaintiff's invention, i. e., the slowing down of a plane while it is still in the air, in order to land it, has not been well regarded by the defendant and plaintiff has not shown that it had been adopted by others. The proof shows rather, as is brought out in our discussion of infringement, that so far as the defendant is concerned, the hook does not, if the landing is skillfully accomplished, engage the cable until after the plane has touched the deck, and if it does so engage it while the plane is a few inches off the deck just before touching it the cable exerts no retarding force until after the wheels of the plane are rolling on the deck.

The universal joint as a device for attaching the rod to the fuselage was not invention. The device itself was well known and Ely had in 1911 (finding 24) and Le Mesurier, in 1918, (finding 30) attached their hooks by "pivots" or universal connections. Plaintiff has not pointed us to any substantial distinction between the pivot connection of his claims 7, 8, 9, 11, and 12, and the universal connection of claim 13, and universal joint of claims 12 and 14. In claim 12, pivot and universal joint seem to be used by plaintiff as synonymous.

We now consider the question whether, assuming patentability, the defendant has infringed. The patent which we must assume is one for an airplane landing mechanism consisting of a movable rod with a hook attached either permanently to the rod, or to a cable, which hook may be so disposed by the pilot that it will engage a retarding device installed on the deck or other limited landing area while the plane is still in flight, and by exerting a pull upon the plane in a direction approximately horizontal and in fore and aft alinement with the center of gravity of the plane, retard it and cause it to land.

The mechanism used by the defendant during the period in question consisted of a rod and hook attached in the rear of and below the center of gravity of the plane, the rod extending rearward and, when pulling, being inclined downward at an angle of 24 degrees from the horizontal, intended to engage transverse cables stretched at right angles to the course of the plane, some fourteen inches (the approximate radius of the wheels of the plane) above the deck, each cable being so attached at its ends that no retarding force is applied until the hook draws the cable into the shape of a V with the point several feet in front of the line which was the position of the cable before it was hooked.

The purpose of the mechanism was not to retard planes while in flight and thus cause them to descend to the landing deck, but to retard their forward progress after they had touched the deck. The construction of the mechanism was such as to reduce to a minimum the possibility of the plane being caught and retarded in flight, which was regarded by the defendant as dangerous. The cables were placed so low that in every case if the plane had not already touched the deck when the hook engaged, it would descend only a few inches farther before doing so, and the tension of the cables was such that no retarding force would be applied to the plane until after its wheels were rolling on the deck.

When plaintiff in 1921 made his demonstration to the defendant's officers, Commander (then Lieutenant) Stone disapproved plaintiff's idea of hooking a plane while in flight, saying it was dangerous. The proof shows that the defendant's officers never changed their views in this regard.

It may be urged that even if the defendant did not desire to retard its planes while still in flight, and did not use its mechanism to do so except by inadvertence or unskillfulness, yet the mechanism was an infringement because it was capable of so operating, and did, on occasion, so operate. We do not think that the monopoly of a patent covers another device, constructed in good faith to operate upon a principle different from that involved in and intended by the patent, merely because it is impossible or impracticable to construct the other device so that it can be operated without inadvertently or un-

skillfully, upon occasion, infringing upon the outside boundaries of what might seem literally to be within the patent. The purpose and the real or supposed advantages of the patent have a bearing upon the scope of the monopoly. If the accused infringer does not recognize as an advantage the idea of the patent, avoids the use of the idea to the greatest extent possible, and does not in fact gain any advantage from his occasional straying across the supposed boundary, he is not, in ·fact, an infringer because the proper boundary of the patent does not extend so far.

In the instant case, it would not be a proper application of the purpose of the patent laws to construe plaintiff's assumed patent for a device to retard the speed of a plane while still in flight so broadly as to prevent the development and use by others of a device to stop the roll of a plane after .it has touched the landing surface. The two ideas are different. Indeed, plaintiff's asserted novelty lay only in the accomplishment of the former, since the latter was plainly anticipated. But because the whole problem arises out of the necessity for landing planes on a surface of limited area, and because the accomplishment of the feat is at best a hazardous one involving great skill, the defendant, desiring to retard the speed of the plane after it has touched the surface, should not be compelled, in order to avoid infringement, to waste a considerabe amount of the limited landing area by locating its transverse cables so far forward on the deck that its planes will never engage one of the cables until after they have touched the landing surface.

We conclude that all of plaintiff's claims are invalid as having been anticipated, and that his claim to a device attached in the rear of and so disposed as to exert a retarding force in approximate fore and aft horizontal alinement with the center of gravity of the plane, in order to retard the speed of the plane while still in flight, was not infringed by the defendant.

The findings of fact, conclusion of law, and opinion heretofore filed are vacated and withdrawn, and new findings of fact, conclusion of law dismissing the petition, and this opinion are now filed. Is is so ordered.

JONES, ·Judge, and WHALEY, Chief Justice, concur.

LITTLETON, Judge, concurs in the findings, and the opinion as to claim 1 of the patent, and dissents as to claims 2, 3, 9, and 12 to 16, inclusive.

WHITAKER, Judge, took no part in the decision of this case.